**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 4740 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| NICKOLAS LEE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In exchange for the government's agreement to move for a reduced sentence, Nickolas

Lee pleaded guilty to bank robbery and brandishing a firearm in furtherance thereof and agreed

to cooperate with the government. In accordance with the agreement, the court sentenced Lee to

121 months in custody. Two years after he was sentenced, Lee provided information to the

government about a different bank robbery with the hope that the government would move to

reduce his sentence further. The government did not, and Lee has filed a petition for relief under

28 U.S.C. § 2255. For the following reasons, Lee's petition is denied.

## BACKGROUND[1]

On October 24, 2008 Lee pleaded guilty to two counts of bank robbery and one count of

using a firearm during the robbery. Lee cooperated with the government and provided

substantial information about other bank robberies in exchange for the government's moving to

reduce Lee's sentence substantially. To comply with the terms of his plea agreement, Lee

participated in a proffer interview on August 11, 2008, during which he provided information

about the bank robberies that were the subject of his indictment. Federal Bureau of Investigation

---

[1] The following facts are taken from the parties' briefs, which contain facts from Lee's underlying
criminal case, *United States* v. *Nickolas Lee*, 07 CR 291 (N.D. Ill. filed Jan. 25, 2008).

("FBI") Special Agent Brian Wentz also asked Lee if he had knowledge of any other bank robberies. At that time, Lee provided information about two additional bank robberies that occurred in 2006 in Oak Forest, Illinois. Based on Lee's cooperation, the government moved for a reduced sentence and the court granted the government's motion and sentenced Lee to 121 months imprisonment on January 30, 2009.

In late 2010 or early 2011, after he was sentenced and incarcerated, Lee, through his attorney Raymond Pijon, contacted the Assistant United States Attorney ("AUSA") who had prosecuted him and Agent Wentz. Lee indicated that he had information about another bank robbery. On April 11, 2011, Agent Wentz met with Lee without his lawyer. According to the FBI report from that day,[2] Lee said he wanted to provide information about an unsolved bank robbery in the hopes that the government would move to reduce his sentence. Lee started to give Agent Wentz details about an unsolved 2006 bank robbery in Homewood, Illinois ("the Wicks robbery"). Lee recounted that in 2006, he was approached by an acquaintance named Kevin Wicks. Wicks took Lee to a female's home in Matteson, Illinois, where they met two young women, one of whom was a bank employee. Lee learned that the group was "looking for someone to pull off [a bank] robbery." (Dkt. 12, ex. 1 at 17.) Later, Lee went to the bank employee's house with a man he identified as "Vino" to discuss the logistics of the robbery.

Before the Wicks robbery occurred, however, Lee robbed a different bank. When he was approached after that to participate in the Wicks robbery, he declined. Lee gave Wicks $2,000 of the money Lee had stolen during his bank robbery.

---

[2] Lee insists that the notes Agent Wentz took at the proffer session "contain errors and misunderstandings" (dkt. 17 at 2), but the court does not see any material inconsistencies between Lee's version of the conversation and Agent Wentz's notes.

On December 11, 2006, the day of the Wicks robbery,[3] Wicks asked Lee to come over to his home. Wicks showed Lee the money he, Vino, and another man, Spencer Taylor, had robbed from the bank that morning. Wicks told Lee about details of the robbery and gave Lee $2,000.[4] Lee and Wicks then went shopping together.

While Lee was recounting these details to Agent Wentz, Agent Wentz showed Lee surveillance photographs from the Wicks robbery. Lee identified Wicks and said that a second man resembled Vino. Agent Wentz's notes also reflect that he explained to Lee that any information in the case would be provided to the government but "no promises could be made as to any benefit [Lee] would receive from talking."[5] (*Id.*)

The government arranged a proffer meeting with Lee, his attorney, Agent Wentz, and AUSA Philip Fluhr on August 8, 2011. At the outset of the meeting, Lee and his attorney, Pijon, executed a proffer letter. (*See* dkt. 12, ex. 3.) The proffer letter is silent as to the government's agreement to move to further reduce Lee's sentence and states that the proffer "embodies the entirety of the agreement" and that "[n]o other promise or agreement exists" regarding information Lee supplied. (*Id.* at 2-3.) According to Fluhr, Lee explained at the proffer session

---

[3] Lee did not know the exact date during his interview.

[4] Lee states in his affidavit that he "do[es] not know and never did know the source of the money given to me by Kevin Wicks. It was an assumption, not knowledge, that it came from robbery proceeds." (Dkt. 17 at 2.)

[5] Lee states in his unsworn § 2255 petition that Wentz explicitly promised that the government would move to reduce Lee's sentence in exchange for information about the Wicks robbery. (*See* dkt. 10 at 7-8.) He does not say this in the affidavit that he filed with his response brief and retreats from this assertion in his reply brief, although he does state in his affidavit that the facts in his petition are "true and correct to [the] best of my knowledge and belief." (Dkt. 17 at 1.) Additionally, both Wentz and the AUSA who interacted with Lee, Phillip Fluhr, testified in their affidavits that they never made any explicit promises to Lee. (*See* dkt. 12, ex. 1 at 3-4 (Wentz advised Lee at outset of April 11, 2011 interview that "no promises could be made to him as to any benefit that he might receive for providing the information"); dkt. 12, ex. 2 at 3-4 (at August 8, 2011 meeting and again at August 18, 2011 meeting with Lee, neither Wentz nor Fluhr "made any promises or agreements with Lee or his attorney regarding the information provided by Lee").)

why he waited until four years after the Wicks robbery, and two years after the negotiation of Lee's guilty plea, to come forward with information about the Wicks robbery. Lee "expressed that he had expected that Wicks, Taylor, and [Vino] would help support his family while he was incarcerated" but that they "had abandoned him while he was in prison and that he felt that they had been disloyal to him." (Dkt. 12, ex. 2 at 5.)

Based in large part on the information that Lee provided, the government indicted Wicks and a coconspirator, Melanie Meeks. To help secure the indictment, Lee testified before the grand jury by reading a written statement that included the information Lee had about the Wicks robbery. (*See* dkt. 12, ex. 4.) The beginning of the statement said:

> I have not been promised anything by the United States Attorney's Office, the Federal Bureau of Investigation, or any other person in exchange for my testimony. I am cooperating with the government and testifying today voluntarily, in hopes that the government will make a motion to reduce the sentence I am currently serving and that the government will recommend a reduced sentence with respect to any crime or crimes with which I may be charged in the future.

(*Id.* at 2.)

About two years after Lee first approached the government with the information about the Wicks robbery, the AUSA's office called Lee's attorney on April 20, 2013, to notify him that the government would not be filing a Rule 35(b) motion to reduce Lee's sentence. Lee's § 2255 petition followed. Lee asserts that, at the very least, he is entitled to an evidentiary hearing on his petition.

## LEGAL STANDARD

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that

the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays*, 397 F.3d at 566-67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**ANALYSIS**

Under Rule 35 of the Federal Rules of Criminal Procedure, the government can make a motion to reduce a defendant's sentence where the defendant provided substantial assistance to the government. Fed. R. Crim. P. 35(b). The decision of whether to make such a motion is in the sole discretion of the prosecutor, and "refusal to request a downward departure is . . . not reviewable for arbitrariness or bad faith." *United States* v. *Burrell*, 963 F.2d 976, 985 (7th Cir. 1992). Unless the decision is made for unconstitutional reasons, is unrelated to a legitimate government interest, or violates a contractual obligation that the government made to the defendant in exchange for his cooperation, the government is free to refuse to request a sentence reduction. *See Wade* v. *United States,* 504 U.S. 181, 184, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992); *United States* v. *Billings*, 546 F.3d 472, 475 (7th Cir. 2008); *United States* v. *Wilson,* 390 F.3d 1003, 1009 (7th Cir. 2004).

Lee argues that the government should have made a motion pursuant to Rule 35(b) because he provided truthful and useful information to the government. He asserts that the government's refusal to make such a motion was not rationally related to any legitimate prosecutorial purpose and was in bad faith.

**I.     Rationale For Refusal To Make Rule 35(b) Motion**

Lee is required to make a "substantial threshold showing that the government improperly withheld a substantial assistance motion before he can receive a remedy or even discovery or an

evidentiary hearing on this issue." *Billings*, 546 F.3d at 475 (citing *Wade*, 504 U.S. at 186 ("It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive.")).

The government asserts that it declined to make Rule 35(b) motion because Lee did not disclose information about the Wicks robbery in a timely manner. Lee had information on the Wicks robbery as early as 2006 but, despite providing a proffer in 2008, failed to disclose it until 2011. The government contends that even if it moved for a further reduction in Lee's sentence, his delay in coming forward with the information would preclude relief under Rule 35(b)(2), which applies to motions made more than one year after the defendant is initially sentenced. In such cases, the court may only reduce the sentence upon the government's motion if the defendant's substantial assistance involved:

> (A)     information not known to the defendant until one year or more after sentencing;
>
> (B)     information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or
>
> (C)     information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed. R. Crim. P. 35(b)(2).

Lee argues that he would qualify for a reduction under section (C) of Rule 35(b)(2) because he did not reasonably anticipate the usefulness of the information about the Wicks robbery at the time of his original proffer as it was unspecific. Yet Lee offers no explanation as to why the usefulness of the information suddenly became apparent in 2011, other than to say

that he provided the information on "a long chance." (Dkt. 10 at 12.) And, according to the government, Lee stated that he initially withheld the information because he believed those who had committed the robbery would be supporting Lee's family while he was in prison and that he only chose to disclose the information once he realized those individuals would not do so. (Dkt 12, ex. 1 at 4; dkt. 12, ex. 2 at 4-5.)

Lee responds that he was not friends with those who committed the Wicks robbery, asserting, for example, that he did not know Vino's last name, but he does not directly refute the government's assertion that he did not originally disclose the information because he had expected help from those individuals. Lee provides the court with no other rational reason for withholding the information about the Wicks robbery until 2011, and the government's decision not to move for a reduction in his sentence because of its tardiness was well within its discretion. Lee has not made a threshold showing that the government's refusal was unrelated to a legitimate prosecutorial interest.

## II.    Bad Faith

Unlike other circuit courts, the Seventh Circuit has held that a prosecutor's refusal to move for a reduction in sentence "is not reviewable for arbitrariness or bad faith" because it is the "prosecutor, not the court, [who] is to assess the value of the defendant's assistance." *Compare Burrell*, 963 F.2d at 985, *with United States* v. *Davis*, 397 F.3d 672, 676 (8th Cir. 2005) ("The exception to the otherwise broad discretion of the government to file a motion for substantial assistance is triggered when the government's refusal was irrational, in bad faith, or based on an unconstitutional motive.") (internal quotation marks and citation omitted). The Seventh Circuit has only engaged in such a review where the district court expressly found that

the government had promised the defendant that it would act in good faith (and then it did not). *See Wilson*, 390 F.3d at 1011.

Lee has failed to make a substantial threshold showing that the government made any promises to him other than what is contained in his proffer letter. He makes much of the fact that the government informed Lee that it would consider filing a Rule 35(b) motion in exchange for his information about the Wicks robbery, despite the fact that it "knew from the beginning that Lee's Rule 35 motion . . . was in serious jeopardy all along" due to his late provision of information. (Dkt. 16 at 9.)

But even if this were the case, the government's subsequent decision to forgo the Rule 35(b) motion is not a breach of any prosecutorial duty. Other than a few allegations in the § 2255 petition that Agent Wentz and Fluhr made "explicit promises" the government would make a Rule 35(b) motion, there is no indication that the government promised to act in good faith, much less promised to make a Rule 35(b) motion. Moreover, as noted above, the government's good or bad faith is immaterial in this circuit. Here, the government did not bargain away its discretionary powers by promising it would actually make a motion in exchange for Lee's testimony; it made it clear to Lee that it was not making any promises to make a Rule 35(b) motion. *See United States* v. *Lezine*, 166 F.3d 895, 900-03 (7th Cir. 1999); *cf. Mays* v. *United States*, No. 04-4238, 2006 WL 418602, at *1 (S.D. Ill. Feb. 21, 2006) ("Where a plea agreement vests the United States attorney with 'sole discretion' to move for a departure, the Government does not breach that agreement when it declines to move for a departure because the government has not promised to make a motion for a sentence reduction.") (citations omitted).

Although Lee hoped that the government would make a departure motion in exchange for his information, he was never promised that it would.  The government was within its discretion in deciding not to make such a motion. Lee's petition cannot succeed.

## CONCLUSION AND ORDER

Based on the foregoing discussion, Lee's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied.  This case is terminated.


Date:   October 14, 2014

U.S. District Judge Joan H. Lefkow